A90A0836. HARVEY v. McLAUGHLIN et al.
(400 SE2d 635)

POPE, Judge.

Plaintiff Chmaine Harvey brought this action against her former employer, defendant/appellee Fox-Morris Associates, Inc. (Fox-Morris) and defendant Paul McLaughlin contending, inter alia, that she was sexually harassed by McLaughlin while she was employed at Fox-Morris and that both McLaughlin and Fox-Morris are liable to her for the damages she suffered as the result of this harassment. The trial court granted Fox-Morris' motion for summary judgment and plaintiff appeals. We reverse.

The record shows that plaintiff was employed by Fox-Morris at its Atlanta office as a secretary/administrative assistant after she graduated from college in June 1987. Plaintiff was interviewed and hired by McLaughlin, who was the manager of the Atlanta office and

plaintiff's immediate supervisor. According to plaintiff's deposition testimony, McLaughlin repeatedly asked her to go out with him after she started working at Fox-Morris. Plaintiff stated the employees of Fox-Morris frequently socialized as a group after work but that she did not want to go out with McLaughlin alone because he was married. However, plaintiff said she eventually agreed to go out with McLaughlin "because [she] worked for him and [she] felt like [she] had to because he kept on asking [her]. . . ."

Plaintiff testified she and McLaughlin went out once (for her birthday) without incident. However, when they went out a second time, McLaughlin continually talked about sex and, in graphic terms, his sexual relations with other women. Plaintiff stated she and McLaughlin left the bar together and drove back to Fox-Morris' office parking lot where he attacked her, trying to pull up her dress and grab her underwear. Plaintiff said she had to hit McLaughlin to make him stop. McLaughlin apologized for the incident that night and again the next day, and asked plaintiff not to tell anyone. Plaintiff said she did tell a fellow employee but no one else at that time.

Plaintiff testified McLaughlin continued to ask her out after the incident, which occurred in September, but she refused to go out with him. Plaintiff testified that McLaughlin made inappropriate remarks to her, such as suggesting that she owed him a kiss in return for office furniture he purchased for her. The situation continued until late December when, according to plaintiff, McLaughlin talked to her in a very demeaning way, telling her she was very naive and not very smart. McLaughlin also criticized plaintiff for arriving at work late and receiving too many personal calls at work. Plaintiff opined at her deposition that McLaughlin's criticisms were prompted by her refusal to go out with him, although she admitted she arrived late for work and received personal calls there. Plaintiff further testified that she was very upset after her conversation with McLaughlin and that she talked to Rebeccah Shepard, a fellow employee, about her conversation with McLaughlin and told Shepard about the earlier incident in September. Shepard, who had supervisory responsibilities over some of the employees in the Atlanta office, informed Harvey Brooks, the executive vice-president and chief operating officer of Fox-Morris, of the incident. Tom Glynn, president of the corporation, came to Atlanta to talk with plaintiff. Plaintiff repeated her story to Glynn, who also questioned McLaughlin about the incident. McLaughlin was then relieved of his managerial duties and moved to another office, where he worked alone. Plaintiff said she had no further problem with McLaughlin after that time, although she did see him on several occasions when he came into the Perimeter Center office. Plaintiff testified, however, that she eventually sought other employment because she was upset and depressed and found it difficult to continue work-

ing at Fox-Morris because of the unpleasant manner in which she was treated by some of the other employees in the office.

1. (a) Plaintiff first contends that Fox-Morris knew or reasonably should have known of McLaughlin's reputation for sexual harassment. " 'A cause of action for negligence against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment. [Cit.]' [Cits.]" *Favors v. Alco Mfg. Co.,* 186 Ga. App. 480, 483 (3) (367 SE2d 328) (1988). In this case it is undisputed that the principals of Fox-Morris had no actual knowledge concerning inappropriate sexual conduct by McLaughlin directed towards other employees until they received notice of the incident giving rise to this lawsuit. The question then becomes whether Fox-Morris, in the exercise of reasonable care, *should* have known of any alleged misconduct on McLaughlin's part of a sexually harrassing nature. "The issue in cases of this kind is knowledge or reason to know, not complaints. An employer may know, or in the exercise of due care have reason to know, of an employee's reputation for sexual harassment in the absence of complaints." Id. at 483.

As to this issue, the record shows Fox-Morris submitted both affidavits and deposition testimony from other employees of the Atlanta office, in which the witnesses stated they were unaware of any prior similar occurrences or instances involving McLaughlin, that such behavior was out of character for McLaughlin and that McLaughlin did not have a reputation for sexual harassment. Additionally, Fox-Morris submitted the affidavit of Harvey Brooks, who testified he had met with McLaughlin on seven or eight occasions, and that on those occasions McLaughlin always conducted himself in a competent and professional manner. Brooks further averred he had met with most of the employees of the Atlanta office and that prior to the incident involving plaintiff no one had ever made any complaint concerning McLaughlin. Tom Glynn testified by way of deposition and affidavit that he had no knowledge from any source concerning McLaughlin's improper conduct and that he was unaware of other incidents of sexual harassment involving McLaughlin. Plaintiff, herself, testified that although McLaughlin sometimes made crude statements of a sexual nature at work, prior to the incident in September McLaughlin had never made improper insinuations or used language she found offensive, and that she knew of no prior similar incidents involving McLaughlin. Plaintiff also confirmed that the corporate officers did not know of any incidents involving McLaughlin.

In opposition to Fox-Morris' motion for summary judgment, plaintiff submitted affidavits from former employees of Fox-Morris

who averred that McLaughlin had engaged in sexually harassing and intimidating conduct towards other female employees in the office, including the use of lewd and obscene language, touching female employees in an inappropriate manner, and implying that female employees should go out with him as a part of their job. Testimony was presented by way of affidavit that McLaughlin's conduct was known generally by the other employees of the office and that the incident involving plaintiff was not an isolated event in that McLaughlin had been involved in similar circumstances involving sexual harassment.

Although a jury may be authorized to conclude that Fox-Morris is not liable to plaintiff under the circumstances of this case, we cannot say, based on the evidence of record, that Fox-Morris was entitled to judgment as a matter of law. In so holding, we are persuaded both by the conflicting evidence and the fact that, although Fox-Morris did not know of McLaughlin's conduct, the record shows no formal grievance procedure existed through which an employee could air complaints of sexual harassment. "In assessing an employer's responsibility and potential liability, federal courts have considered factors such as: whether the employer had an express policy discouraging unlawful discrimination, provided a mechanism by which employees could complain, and promptly responded to the complaints. [Cit.] Similar principles should be applied in actions brought in this State." *Coleman v. Housing Auth.*, 191 Ga. App. 166, 170-171 (2) (381 SE2d 303) (1989). " 'On a motion for summary judgment the evidence must be construed most strongly against the movant, and the party opposing the motion is entitled to all inferences that may fairly and reasonably be drawn in support of his case. [Cit.]' [Cit.] Giving the plaintiff, the party opposing [Fox-Morris'] summary judgment motion, the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, [we find that genuine issues of material fact remain concerning whether the employer should have known of McLaughlin's alleged reputation for sexual harassment.]" *Favors*, supra at 483. See also *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670 (3) (347 SE2d 619) (1986).

(b) Plaintiff also contends that issues of fact remain as to whether McLaughlin was a "vice-principal" of Fox-Morris, thereby allowing his knowledge to be imputed to the corporation. We find no merit to this argument. "[T]he test as to whether a servant is a vice-principal or a fellow servant does not depend upon his title, or his grade, or the character of the work that he is engaged in, but it depends upon the act which he is doing which results in the injury." *Moore v. Dublin Cotton Mills*, 127 Ga. 609, 623 (56 SE 839) (1906). As plaintiff's own complaint states, the conduct of the employee here "was performed for purely personal reasons and did not arise as an actual incident of [plaintiff's] employment." Since it is clear that Mc-

Laughlin was not "acting for" the employer in this case, summary judgment was properly granted as to this theory of recovery.

(c) Plaintiff also argues that Fox-Morris condoned or ratified McLaughlin's conduct because it failed to remove him from a supervisory position after it learned of his alleged sexual harassment of plaintiff and others and because it reimbursed him for expenses incurred on the night the incident involving plaintiff occurred. Contrary to plaintiff's assertions, however, the record shows McLaughlin was removed from the office where plaintiff worked after Fox-Morris learned of the incident, and that although he was not terminated as an employee, he was immediately relieved of all supervisory or managerial duties. Likewise, although Fox-Morris initially reimbursed McLaughlin for his expenses, it did so only because McLaughlin submitted a falsified expense document and the corporation demanded repayment as soon as it learned the true nature of the expenses. Thus we find no merit to this argument.

2. For the reasons stated in Division 1 (a), questions of fact also remain as to whether Fox-Morris negligently failed to keep its work place free from sexual harassment.

*Judgment reversed. Deen, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 16, 1990 —
REHEARING DENIED DECEMBER 18, 1990 — ▮▮▮▮▮▮

*Henning, Aitkens & Snellings, Stanely T. Snellings,* for appellant.

*Paul L. Hanes, Corinne M. Milsteen, Heyman & Sizemore, William B. Brown,* for appellees.