A01A0142. H. J. RUSSELL & COMPANY v. JONES.
(550 SE2d 450)

JOHNSON, Presiding Judge.

A Fulton County jury found for Regina Jones and against H. J. Russell & Company in connection with H. J. Russell's supervision and retention of employee Dwight Brown. On appeal, H. J. Russell claims that the trial court erred in denying its motion for a directed verdict and that the evidence does not support the verdict. We disagree and affirm.

A directed verdict is authorized only when there is no conflict in

---

the evidence on any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict.[1] "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence."[2]

Viewed in the light most favorable to support the verdict, the evidence shows that Jones was hired by H. J. Russell in June 1994 as an on-site property manager. Jones first met Brown when she went to the H. J. Russell main office to pick up some documents from her supervisor. He approached her and pulled up his pants so that it showed the outline of his penis. Brown grabbed her around the waist and looked to see if she had a wedding band. Jones told Brown that she was married; he said damn, put his hands in his pockets, and walked away. Brown had numerous other encounters with Jones in which he would touch her, use inappropriate language, and pull up the crotch of his pants. When Jones introduced Brown to her daughter, Brown told Jones's daughter she was a "fine young thing," and raised up his pants to show the outline of his penis.

Brown became Jones's direct supervisor in April or May 1995. After July 1995, Brown and Jones walked through the property she was managing; Jones remarked that her toes hurt from the walk, and Brown said, "I'll suck them toes for you." In August 1995, Brown became angry when Jones refused to meet with him after office hours. In October 1995, when asking Jones to have a birthday drink with him, he stared at her, put his hand on his penis, and rubbed it through his clothes. In January 1996, when Jones was using a photocopy machine, Brown rubbed his penis against her behind as he passed, even though there was room for him to pass without touching her.

Jones first reported Brown's unwelcome conduct to her supervisor in the latter part of 1994. In August 1995, she met with H. J. Russell vice president Jerome Russell about Brown's conduct. Russell referred Jones to the human resources manager, and Jones discussed Brown's behavior in detail with her. The human resources manager asked Jones to put her complaints about Brown in writing, and Jones submitted a memorandum outlining three of the incidents with Brown.

In response to Jones's complaints, H. J. Russell removed Brown as Jones's direct supervisor in late September or early October 1995 and placed a letter of reprimand in his file. In January 1996, Brown

---

[1] *Carden v. Burckhalter*, 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994).

[2] (Citations and punctuation omitted.) *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 162 (1) (473 SE2d 256) (1996).

was promoted to a position where he had authority over Jones's immediate supervisor and the company's other regional managers. After his promotion, and during a break in a company-wide meeting of property managers, Brown walked by Jones and told her, "I'm still here." Jones resigned in February 1996 and told the human resources director that she was leaving the company because of Brown.

The evidence also shows a history of inappropriate activity by Brown in connection with other female employees of H. J. Russell. He made inappropriate comments to Candice Russell, a regional property manager. Brown told a female employee at the main office that she should continue wearing short skirts. Brown offered money to another regional property manager if she would "be" with him. He told a female employee working under him that, "I'd like to have some of that," while pointing at the employee's crotch.

In a special interrogatories and verdict form, a Fulton County jury found that H. J. Russell (1) negligently retained or supervised its employee Brown, and (2) such negligent retention or supervision of Brown was wilful, wanton or malicious, and directed toward Jones. "A cause of action for negligence against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment."[3] The evidence authorized the jury's finding that H. J. Russell had been negligent in its supervision or retention of Brown.

H. J. Russell argues that because Jones proved no physical or pecuniary injury, she was entitled to recover only for injury to peace and happiness under OCGA § 51-12-6 and that the evidence presented would not authorize a damage award. H. J. Russell further claims that even admitting for purposes of argument that it was negligent in supervising Brown, the evidence does not authorize a finding that its actions were wilful, wanton or malicious, and directed toward Jones. We disagree.

Negligent conduct, without more, will not support a recovery for emotional distress.[4] Damages are generally not available for mental pain, suffering, or emotional distress unless accompanied by physical or pecuniary loss[5] or the result of malicious, wilful, and wanton

---

[3] (Citations and punctuation omitted.) *Harvey v. McLaughlin*, 198 Ga. App. 105, 107 (1) (a) (400 SE2d 635) (1990).

[4] See *Lee v. State Farm &c. Ins. Co.*, 272 Ga. 583, 588 (III) (533 SE2d 82) (2000) ("[W]e decline to adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of emotional distress.").

[5] See *OB-GYN Assoc. of Albany v. Littleton*, 259 Ga. 663, 665-666 (2) (386 SE2d 146) (1989). But see *Lee*, supra at 588 (recovery for emotional distress allowed when physical injury was inflicted on complainant's child in complainant's presence).

action directed at the complainant.[6] Because Jones did not show physical damage or pecuniary loss, we agree with H. J. Russell that the case presented here would allow only for a recovery of damages to her peace and happiness as the result of malicious, wilful, and wanton action directed at the complainant. Wilful and wanton conduct is conduct which shows "that entire absence of care which would raise the presumption of conscious indifference, or that with reckless indifference, the person acted with actual or imputed knowledge that the inevitable or probable consequences of his conduct would be to inflict injury."[7] H. J. Russell was specifically found to have engaged in wilful, wanton, or malicious conduct by the jury.

The evidence shows that H. J. Russell knew Brown had engaged in inappropriate behavior amounting to sexual harassment toward a number of female co-workers and toward Jones in particular. And the evidence would authorize a jury to conclude that the management of H. J. Russell knew that it had not adequately protected Jones from Brown. Even after being removed as Jones's immediate supervisor, Brown was allowed to visit the property Jones was managing. Evidence also shows that Brown continued to harass Jones when she visited the main office; the main office was the location where most harassment occurred both before and after Brown was removed as Jones's immediate supervisor. The jury would be authorized to find that the actions taken by H. J. Russell to protect Jones from Brown were ineffective and that H. J. Russell knew they were ineffective but failed to act.

H. J. Russell argues that, even if it acted wilfully or wantonly, Jones cannot recover unless its actions were directed at Jones.[8] In *Ford v. Whipple,* for example, the defendant sped through a red light and collided with the car in which the plaintiff's child was a passenger. Because the child was not physically hurt, we held that the defendant's acts must have been directed at the child to support a recovery. We found that though the defendant's conduct may have been wanton, the conduct could not be said to be directed at anyone, including the child. By contrast, H. J. Russell knew that Brown was targeting Jones, and so a wanton failure by H. J. Russell in supervising Brown can fairly be seen as a wanton failure to fulfill its duty to Jones in particular.

H. J. Russell claims that the two-year statute of limitation applicable to Jones's claim of negligent supervision and retention was sub-

---

[6] *Ryckeley v. Callaway,* 261 Ga. 828, 829 (412 SE2d 826) (1992); *Westview Cemetery v. Blanchard,* 234 Ga. 540 (216 SE2d 776) (1975).

[7] (Punctuation omitted.) *Brady v. Glosson,* 87 Ga. App. 476, 480 (74 SE2d 253) (1953).

[8] *Jordan v. Atlanta Affordable Housing Fund,* 230 Ga. App. 734, 737 (2) (498 SE2d 104) (1998); *Ford v. Whipple,* 225 Ga. App. 276, 278 (483 SE2d 591) (1997).

stantially ignored by the jury. Because Jones filed her complaint on July 30, 1997, she was not entitled to recover for claims arising prior to July 30, 1995. Evidence was introduced at trial concerning incidents of harassment occurring before July 30, 1995, but the trial court charged the jury that "Ms. Jones may only recover for those actions or comments occurring after July 30, 1995. . . ." H. J. Russell maintains that no reasonable minded jury could find sufficient evidence to warrant a finding that its conduct was malicious, wilful, wanton, and directed at Jones based on events occurring after July 30, 1995. However, the evidence of Brown's actions before July 30, 1995, are relevant as to whether H. J. Russell knew or should have known that Brown was a threat to Jones. Acts of sexual harassment occurred after July 30, 1995, and the evidence would support a finding that H. J. Russell supervised and retained Brown after July 30, 1995, under conditions which showed a wanton disrespect for the safety of Jones. For the reasons set forth above, we find that the trial court did not err in denying H. J. Russell's motion for a directed verdict and that the evidence was sufficient to support the jury's verdict.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JUNE 8, 2001.

*Smith, Gambrell & Russell, David M. Brown, Lisa L. Ballentine, Tracie Y. Johnson*, for appellant.

*Blackburn, Walther & Sloan, Donna C. Sloan, Samuel P. Westmoreland*, for appellee.