A06A2379. MARWEDE v. EQR/LINCOLN LIMITED
PARTNERSHIP.
(643 SE2d 766)

ADAMS, Judge.

In this personal injury action, which resulted in a defense verdict in favor of EQR/Lincoln Limited Partnership, plaintiff Katherine R. Marwede contends the trial court erred by opening default against EQR, by failing to rule as a matter of law that EQR's employee was operating within the scope of her employment at the time of the incident, and in charging the jury.

Construed in favor of the verdict, the relevant facts show that Mandy Mancini was employed by EQR, the managing agent for an apartment complex owned by L/G Gentry's Walk, LLC ("L/G"). Mancini's office was located on the premises, and she also lived in one of the apartments in the complex and received a rent reduction as a part of her job. But she was not required to live on site.

On Sunday afternoon, July 7, 2002, Mancini left work at the leasing office five or ten minutes before 6:00 p.m., the end of her work day, and drove the short distance to her apartment-home in her own car. She was off work and not planning to return. The leasing office was located in the "Clubhouse" of the complex, and her apartment was located two apartment buildings away, each of which had its own road or drive. She drove around the end of the building in which the Clubhouse was located, then past the first road on her left and the first apartment building, and then she began to turn into the road to her apartment building when she saw Marwede and slammed on her

brakes. Marwede fell to the ground and was injured. The parties disputed whether Mancini's car actually struck Marwede.

Following a trial on Marwede's claims, the jury returned a special verdict finding that Mancini was not acting within the course and scope of her employment at the time of the incident.

1. Marwede first contends the trial court erred by opening a default judgment that had been entered against EQR. Marwede argues that EQR was required to file an answer in response to being added as a defendant to the action.

Marwede initially filed suit against two parties: L/G, the development owner, and Lincoln Property Company, who she believed to be the managing agent of the development. L/G and Lincoln jointly answered and therein asserted that Lincoln, a Texas corporation, was not the managing agent and that EQR, a Delaware limited partnership, was. Thereafter, the parties cooperated in obtaining a consent order dropping Lincoln from the suit and adding EQR in its place. Marwede, unable to obtain a waiver of service from EQR, then served EQR with a new summons, the original complaint, and an amendment to the complaint, in which the paragraph identifying the "Defendant Manager" was changed to indicate EQR.

EQR did not answer, and Marwede sought and obtained a default judgment on that ground. EQR later moved to open default, which the trial court granted on the ground that in accordance with *Random Access v. Atlanta Datacom*, 232 Ga. App. 269 (501 SE2d 610) (1998), EQR was not required to answer.

Generally, when a plaintiff sues the wrong party, he or she must seek an order of court pursuant to OCGA § 9-11-21 to drop the incorrect party and add the proper party:

> Where ... a party seeks to add a new party by amendment ... [OCGA § 9-11-15 (a)] must be read in pari materia with [OCGA § 9-11-21], which allows the dropping and adding of parties only "by order of the court on motion of any party."

(Emphasis omitted.) *Clover Realty Co. v. Todd*, 237 Ga. 821, 822 (229 SE2d 649) (1976). See also *Foskey v. Vidalia City School*, 258 Ga. App. 298, 300 (574 SE2d 367) (2002) (when plaintiff sues and serves the wrong corporate entity or person, an actual change in parties is required under the appropriate procedure).[1] And, except in the case of waiver, any new defendant added must be served with process: " 'If

---

[1] Compare OCGA § 9-10-132 (correction of a misnomer); *Northgate Village Apts. v. Smith*, 207 Ga. App. 479, 481 (2) (428 SE2d 381) (1993) (correction of a misnomer involves no substitution of parties and does not add a new and distinct party).

a motion to add a party is granted, . . . service of process must be made in the usual way. . . .' (Cits.)" *Stone Mountain Aviation v. Rollins Leasing Corp.*, 174 Ga. App. 35, 36 (2) (329 SE2d 247) (1985).

But an answer is not required in response to an amended pleading unless ordered by the court. OCGA § 9-11-15 (a). This rule applies when a party is added by amendment to an existing suit. *Random Access*, 232 Ga. App. at 270. See also *Chan v. W-East Trading Corp.*, 199 Ga. App. 76, 79 (5) (403 SE2d 840) (1991) ("the Civil Practice Act authorizes the *addition* of parties, by order of the court, and . . . an 'amended complaint' effecting such an addition does not require a responsive pleading, unless the trial court orders a reply thereto") (emphasis in original).

Marwede's reliance on *Jesup Carpet Factory Outlet v. Ken Carpets of LaGrange*, 142 Ga. App. 301 (235 SE2d 684) (1977), is misplaced. That case represents a different situation — in which an answer by a new defendant is required — that occurs when the plaintiff has initially sued and served only one defendant who turns out to be the wrong party. In that instance, when the correct defendant is substituted for the incorrectly named defendant and served (or waives service), the substituted defendant is required to file an answer even though not ordered to do so by the court. See id. at 302 (1) (substituted defendant could not rely on the original defendant's answer because they were two separate legal entities). This is so because in cases where a single named party defendant is wrongly sued then dropped, there is no answer at all and no continuity to the pending lawsuit. See generally *Pendley v. Hunter*, 138 Ga. App. 864, 865 (1) (227 SE2d 857) (1976). "Such is not the case where there are multiple defendants. When one is dropped as a party defendant, the suit continues against the remaining defendant(s). Additional defendants may then be added pursuant to [OCGA §§ 9-11-19; 9-11-20; 9-11-21]." Id.[2]

In this case, Marwede sued two parties but substituted only one.[3] Accordingly, EQR was not required to file an answer absent an order by the court to do so and was therefore not in default. *Random Access*, 232 Ga. App. at 270; *Chan*, 199 Ga. App. at 79. Thus, as the trial court correctly found, "a proper case has been made for the default to be opened. . . ." OCGA § 9-11-55 (b), and the trial court did not abuse its discretion in so doing. See *Wright v. Mann*, 271 Ga. App. 832 (611 SE2d 118) (2005).

---

[2] *Lamas Co. v. Baldwin*, 120 Ga. App. 149 (169 SE2d 638) (1969), is not on point. In that case the party to be added was never served.

[3] That party, EQR, consented to the substitution and therefore waived service. See *Jesup Carpet*, 142 Ga. App. at 302 (1).

2. Marwede next contends the trial court failed to direct a verdict and rule as a matter of law that Mancini was operating within the scope of her employment at the time of the incident because it occurred during her egress from her job while on premises managed by EQR. "A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict." (Footnote omitted.) *H. J. Russell & Co. v. Jones*, 250 Ga. App. 28, 28-29 (550 SE2d 450) (2001).

"When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master. [Cits.]" *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979). And the question is for determination by the jury "except in plain and indisputable cases." *West Point Pepperell v. Knowles*, 132 Ga. App. 253, 256 (1) (a) (208 SE2d 17) (1974).

With certain exceptions, " 'an employee is deemed to act only for his own purposes while commuting to [or from] work.' [Cit.]" *Betsill v. Scale Systems*, 269 Ga. App. 393, 395 (604 SE2d 265) (2004). One exception — at issue here — is that " 'the period of employment generally includes a reasonable time for ingress to and egress from the place of work, while on the employer's premises.' " *United States Cas. Co. v. Russell*, 98 Ga. App. 181, 182 (105 SE2d 378) (1958). In this regard, it has been said that this exception is "predicated on the rationale that until the employee has actually departed the premises, he has not 'started traveling a route of his choosing wholly disconnected with his employment.' [Cit.]" (Punctuation omitted.) *Southern Bell Tel. &c. Co. v. Conyers Toyota*, 190 Ga. App. 792, 793 (380 SE2d 296) (1989) (also describing overlap between the laws of negligence and workers' compensation on this point).[4] But this last statement should not be misread to alter the true meaning of the ingress and egress rule quoted above.

Marwede contends this last statement means that an employee who is on property owned, managed, or operated by her employer is acting within the scope of employment as a matter of law. We

---

[4] "The question of whether an employee-employer relationship exists within the meaning of the Workers' Compensation Act is governed by the same principles that determine the issue under the common law." *Farmer v. Ryder Truck Lines*, 245 Ga. 734, 737, n. 2 (266 SE2d 922) (1980). *Housing Auth., City of Cartersville v. Jackson*, 226 Ga. App. 182, 183 (2) (486 SE2d 54) (1997). Compare *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 354-355 (634 SE2d 153) (2006) (generally, the laws of workers' compensation and negligence are different with regard to scope of employment).

disagree. The statement, first found in *Conyers Toyota*, was formulated from language found in *Fed. Ins. Co. v. Coram*, 95 Ga. App. 622, 624 (98 SE2d 214) (1957). See *Conyers Toyota*, 190 Ga. App. at 793. In *Coram*, an employee was departing work and was walking across employer property to a parking lot located on the employer's premises. *Coram*, 95 Ga. App. at 623. This Court distinguished ingress and egress cases by noting that the employee in *Coram* "had not yet departed from the employer's premises and started traveling a route of her choosing wholly disconnected with her employment." Id. at 624. By reading the entire case, however, it is easy to see that this Court did not intend to create a bright-line rule as Marwede contends.

For instance, in deciding that the employee was still within the scope of her duties, this Court distinguished "rest period" and "lunch hour" cases because, even though the employee might be on the employer's premises, such time was taken for the employee's personal benefit. *Coram*, 95 Ga. App. at 624. More importantly, as has been made clear in several workers' compensation cases, the exception is based on an assessment of reasonable time: " 'the period of employment generally includes a reasonable time for ingress to and egress from the place of work, while on the employer's premises.' " *Russell*, 98 Ga. App. at 182. The cases examine situations where an employee's arrival at the employer's premises in advance of work hours creates an issue of fact as to whether he is acting within the scope of his employment at that time. See, e.g., id. at 182; *Travelers Ins. Co. v. Smith*, 91 Ga. App. 305 (85 SE2d 484) (1954); *Gen. Accident &c. Corp. v. Worley*, 86 Ga. App. 794 (72 SE2d 560) (1952). As stated in *Worley*, "[o]ne of the facts which must necessarily distinguish each case is the length of time between the reception of the injuries and the hours of employment." Id. at 796. The corollary of this rule for job egress is that lingering on the job site after work may mean that one is acting for personal benefit and not within the scope of employment. See, e.g., *Rucker v. Troll Book Fairs*, 232 Ga. App. 189, 190 (1) (501 SE2d 301) (1998) (despite employee's presence on employer's property sometime after departing for the day, employee's actions found to be personal in this negligence case). Indeed, a person might remain on his or her employer's premises for reasons other than work, and an employer's premises might be quite large and multifaceted where an employee could engage in a variety of other activities, including living there, leisure activities, or otherwise.

Moreover, the reasonable time requirement of the ingress and egress rule is simply a manifestation of the idea that an employee is not acting within the scope of employment if he or she steps aside from his or her duties for personal reasons even if still on the employer's premises. See *Smith*, 91 Ga. App. at 310, and cases cited therein. See also *Russell*, 98 Ga. App. at 185 (noting that even though

the employee was on site, if he had been deviating from his route on a personal mission, he would not have been acting "out of the course of employment"). Accordingly, as can be seen, *Coram* and the other workers' compensation cases cannot be read to stand for the proposition that simple presence on the employer's property establishes that the employee is acting within the scope of employment even if the employee is departing the premises.

In this case, we agree with the trial court that an issue of fact was presented as to whether, at the time of the incident, Mancini had started traveling a route of her own choosing wholly disconnected with her employment. See *Conyers Toyota*, 190 Ga. App. at 793. Although she was still on the property managed by EQR, she was not required to live there. And she had left work, was off duty, had driven some distance, and was turning onto the street where she lived. She was almost home. The jury was authorized to find that she was not acting within the scope of her employment and on the business of EQR at the time of the incident.

3. Consequently, we find no error in the court's charge to the jury on this issue. Marwede complains that the court erred by charging, "because the employee lived in her employer's apartment complex, it is for you, the jury, to determine whether the employee had started to travel a route of her own choosing wholly disconnected with her employment at the time of the event or collision, that's the subject of this case." Under the facts of this case, the charge was proper, as explained above.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 5, 2007 —
RECONSIDERATION DENIED MARCH 22, 2007 — ▉▉▉▉▉▉▉▉

*William R. McCracken*, for appellant.
*Magill & Atkinson, Thomas E. Magill, Jason S. Nochimson*, for appellee.