**Laurie A. McDANIEL, Plaintiff,**

v.

**FULTON COUNTY SCHOOL DISTRICT, Fulton County Board of Education, David Richardson, and Johnny M. Moses, Defendants.**

No. CIV.A. 1:00–CV–1929–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 13, 2002.

Phillip D. Ulan, Office of Phillip D. Ulan, Atlanta, GA, for Plaintiff.

Glen S. Bass, Goldner Sommers, Scrudder & Bass, Judith A. O'Brien, Valerie Strong Sanders, Sutherland, Asbill & Brennan, Atlanta, GA, for Defendants.

### ORDER

CARNES, District Judge.

The above-captioned employment discrimination action is before the Court on plaintiff's Objections [58] and defendants' Objections [59] to the Magistrate Judge's Report and Recommendation [52], which recommended granting in part and denying in part the defendants' Motion for Summary Judgment [32]. The Court has reviewed the record and the arguments of the parties and, for the reasons set forth below, concludes that defendants' Objections [59] should be **OVERRULED** and plaintiff's Objections [58] should be **SUSTAINED in part and OVERRULED in part.**

Although the Court sustains plaintiff's objection that the Magistrate Judge erred in concluding that the defendants were entitled to summary judgment on plaintiff's Title VII claim alleging that defendants maintained a hostile work environment, the Court adopts the remaining recommendations of the Magistrate Judge that the defendants' motion for summary judgment be denied with respect to plaintiff's claim under 42 U.S.C. § 1983 against defendant Richardson individually, but granted with respect to all other claims. Thus, the Magistrate Judge's Report and Recommendation [52] is **ADOPTED IN PART and REJECTED IN PART** and defendants' Motion For Summary Judgment [32] is **GRANTED in part and DENIED in part.**

### FACTS

Plaintiff is a former employee of defendant Fulton County School District ("FCSD"). She alleges that, during her employment with the FCSD, defendants Johnny Moses and David Richardson harassed her on the basis of her sex and unlawfully retaliated against her for complaining about that harassment. She has brought this action against the FCSD, the Fulton County Board of Education (collectively the "County Defendants"), and Moses and Richardson individually, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., 42 U.S.C. § 1983 ("Section 1983"), and 42 U.S.C. § 1985(3) ("Section 1985"), and also asserting a claim under Georgia common law for negligent retention and supervision.

The action is before the Court on the Magistrate Judge's Report and Recommendation [52], which recommended that the defendants' Motion For Summary Judgment [32] be granted in part and denied in part. Magistrate Judge Walker concluded that the defendants were entitled to summary judgment on all of plaintiff's claims except for her sexual harassment claim against defendant Richardson, individually, brought pursuant to Section 1983. Thereafter, both the plaintiff and defendants filed objections to the Report and Recommendation.

Neither party has objected to Judge Walker's findings of fact, and the Court finds them to be an accurate statement of the facts in the record, as viewed in the light most favorable to the plaintiff.[1]

---

1. Defendants do object, however, to any facts that are asserted for the first time in plaintiff's affidavit submitted in connection with her

Therefore, the Court adopts the findings of fact as set out in Judge Walker's Report and Recommendation, and assumes them to be true for the purpose of this discussion. As noted by the Magistrate Judge, in reviewing the evidence submitted by the parties, the Court must view all evidence and factual inferences in the light most favorable to the plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993).

Because Judge Walker has set out the facts in detail, the Court will merely summarize them herein, and will add appropriate citations to the record for additional relevant facts. The plaintiff, Laurie McDaniel, was first hired by the FCSD as a teacher assistant and, in November, 1992, she was hired by Steve Monroe, Director of Transportation Operations, as a Clerk II in the FCSD Transportation Department. Plaintiff later became a departmental secretary, and her supervisor was John Moses.[2] When Moses was out of the office, which was typically only for one half-day each week, David Richardson supervised the employees at the unit, including the plaintiff.

According to the plaintiff, her problems began with Richardson in the summer of 1998, when she separated from her husband. She contends that Richardson began hugging her at work, calling her at home several times a week about personal matters, e-mailing her, and repeatedly asking her out to dinner. Plaintiff also claims that in summer of 1998, Richardson followed her to Indian Springs park, uninvited, where he knew the plaintiff was fishing, and asked her whether he could hold her hand and kiss her and whether she had "a problem with a black/white thing." On one occasion prior to October 1998, Richardson told plaintiff that his wife was out of town, he wanted her to join him for dinner, and that if plaintiff would accompany him to dinner, he would buy her a dress.

At some point in 1998, the plaintiff confided in Brenda Mansell, another employee for whom plaintiff occasionally did secretarial work, about the alleged harassment she was being subjected to by Richardson. Mansell suggested to the plaintiff that she should bring her complaints to Monroe. Plaintiff later complained in October of 1998 about Richardson's harassment to Linda Muth, the routing supervisor, and

response to the defendant's motion for summary judgment. (Def. Obj. [59] at 7–13.) Defendants argue that plaintiff's affidavit should be deemed inadmissible because it contained allegations that had not been previously provided to the defendants during discovery; in particular, the plaintiff mentioned certain incidents of alleged harassment in the affidavit that she had failed to mention during her deposition. The Magistrate Judge concluded that the affidavit was not a "sham" affidavit and was therefore admissible, and the defendants have objected to that finding. The Court agrees with the Magistrate Judge that the affidavit is not inadmissible as a "sham" affidavit. *See* discussion of defendants' objections, *infra*.

**2.** Although plaintiff contends that Richardson was also her supervisor, the Magistrate Judge concluded that the plaintiff had failed to provide any evidence to support that assertion, and the plaintiff has not objected to the Magistrate Judge's finding in that regard. (Report and Recommendation ["RR"] [52] at 5 n. 2.) Accordingly, it is undisputed that Moses was the plaintiff's supervisor and Richardson was merely a co-worker with no authority to fire or discipline the plaintiff, although he did have limited supervisory duties in the office for the four hours per week that Moses was away.

Muth brought the plaintiff's complaint to the attention of Monroe. Monroe subsequently called the plaintiff at home in October of 1998 to discuss her allegations, and the plaintiff informed Monroe that Richardson was sexually harassing her by calling her at home, e-mailing her, approaching her while she was in her car, leaving messages with her children, and following her to various places outside of work. When Monroe asked plaintiff what she would like him to do about Richardson's behavior, plaintiff told him that she would like the behavior to stop.

Monroe then discussed the plaintiff's complaints with Richardson and Moses. According to Monroe, he explained to Richardson that if any of the plaintiff's accusations had merit, Richardson must stop. According to Richardson, however, Monroe merely advised him not to be involved in activities alone with the plaintiff and to try to be more understanding. Richardson contends that Monroe never informed him that the plaintiff had accused him of sexually harassing her, and instead told him only that the plaintiff felt that Richardson was treating her unfairly and differently than the other secretaries. (Richardson Dep. at 177.) Richardson received no warning or reprimand, nor did he ever receive any discipline of any kind as a result of the plaintiff's complaints about his conduct. (*Id.* at 234.) In fact, Richardson claims that his behavior toward the plaintiff did not change at all after his conversation with Monroe. (*Id.* at 187.)

A few weeks after she complained about Richardson, Monroe called the plaintiff at least three times to ask her how things were going, and she did not make any further complaints to Monroe about Richardson or tell him that Richardson was continuing to harass her. (McDaniel Dep. at 139.) Plaintiff contends, however, that soon after she complained about Richard-

son, he began having many closed door meetings with other employees in which she overheard him making negative comments about her work performance, her children, and her estranged husband. According to plaintiff, Richardson stated that he needed to talk to plaintiff's estranged husband so that he could advise him how to take care of a woman like plaintiff. Plaintiff also contends that, after she complained to Monroe in October of 1998, an incident occurred when in which Richardson yelled at her and threatened her that "payback is hell."

The plaintiff further claims that, approximately three months after she complained to Monroe, Richardson began sexually harassing her again, and his harassing behavior continued throughout 1999. According to the plaintiff, Richardson resumed asking her out for dinner and lunch, and hugged her on two separate occasions. She claims that sometime in April, 1999, Richardson grabbed her around her throat and then complained that his hands smelled of perfume. On one occasion, Richardson also commented that the reason plaintiff was so tired was because she needed a man. Plaintiff further alleges that Richardson would turn the knob on a music box which contained a spinning ballerina in her presence, while making comments such as "watch Laurie spin," and "Boy, I could make love to Laurie if she looked like this." According to plaintiff, Richardson made "constant references" like that. (McDaniel Dep. at 137.)

In April of 1999, Richardson once commented, "Gee, I have all these girlfriends. I have everybody but McDaniel." Plaintiff alleges that Richardson once snapped her bra strap so hard that it stung, and that he also made frequent comments about her clothing, telling her in approximately June of 1999 that her shirt looked "scrunched

up" and that her shirt was too tight. (McDaniel·Dep. at 137–138.) Richardson also asked the plaintiff and another female co-worker whether they had "dicks" and whether they "peed standing up." (*Id.* at 138.) In approximately September, 1999, Richardson also referred to the breasts of some of the school girls riding the school buses as "big cahoonas." In October of 1999, while plaintiff was taking off her jacket, Mr. Richardson commented, "Are you gonna strip for us now." Plaintiff further states that Richardson began making sexually suggestive gestures to her and that he would stick his tongue out and make a motion like he was licking something, would run his tongue across his teeth, and would make kissing motions at her. These gestures continued through November of 1999 and afterwards.

In addition to the sexual harassment, Richardson did other things to the plaintiff in 1999 that she considered abusive and retaliatory. She contends that in March, 1999, he snapped her head hard with his fingers. In April, 1999, Richardson interrupted a conversation the plaintiff was having with a co-worker and told the co-worker not to talk to the plaintiff because she was a "backstabber." On May 20, 1999, Richardson implied that the plaintiff would be disciplined by stating that he would take her to the "White House," referencing Mr. Monroe's office, to have a meeting to put plaintiff in her place. On another occasion in 1999, Mr. Richardson told her that he was the player and she was the playee. Plaintiff claims that, for an entire week in November, 1999, Richardson would say, while referring to the plaintiff, "Don't pay attention to ignorant people," and plaintiff contends he also refused to take phone calls from her in November, 1999. Finally, plaintiff complains that on November 29, 1999, Mr. Richardson called her a "stupid ass" when she did not take a phone call.

Although the plaintiff did not complain again to Monroe about Richardson's behavior, she contends that in or around May or June of 1999, she complained about the alleged incidents of harassment to Muth, the routing supervisor, but nothing was done to stop Richardson's harassment. Plaintiff did not complain to Monroe, because she felt that he had done "nothing" to stop Richardson's conduct when she had previously complained in the fall of 1998. Plaintiff also did not complain to Moses, her direct supervisor, because she contends that he was present during many of the alleged incidents of harassment and was thus well aware of Richardson's behavior, but did nothing to stop it. On December 1, 1999, plaintiff filed a formal complaint with the Board of Education describing the incidents of sexual harassment by Richardson. On December 20, 1999, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was sexually harassed by Richardson, and also that she was retaliated against by the defendants for complaining about Richardson's harassment.

In response to plaintiff's formal complaint of sexual harassment, an investigation was conducted on behalf of the school district by investigator Clyde James. According to James, many of plaintiff's allegations were contradicted by the accounts of Richardson and other employees. James completed his investigation and submitted a detailed report to Monroe in February of 2000. In or around March, 2000, after Monroe had received and reviewed the report from the investigation, he met with plaintiff and Richardson separately to discuss the situation. Monroe warned Richardson about his alleged behavior and issued him a "letter of instruction" about the incident. In the letter of instruction, Monroe listed some of the plaintiff's allegations and noted that Rich-

ardson's continued misconduct could result in disciplinary action. Monroe also emphasized that Richardson should exhibit more professional behavior. Richardson did not consider this "letter of instruction" to be a disciplinary action in any way, because it was his impression that the school district had not concluded that he had harassed the plaintiff or that he had done anything wrong. (*See* Richardson Dep. at 234.) In addition, Monroe also met with plaintiff and Moses on March 29, 2000, and again on April 13, 2000, to discuss her complaints and to discuss the work environment in the transportation office.

After plaintiff filed her formal complaint of sexual harassment, she contends that both Richardson and Moses, her supervisor, retaliated against her in various ways. On December 17, 1999, at a weekly supervisors meeting, Moses told the supervisors that if anyone felt like they were working in a hostile environment, they needed "to transfer out." Moses also stated to other employees, in reference to plaintiff: "How does she have time to document? Seems like she's not doing her job if she has time to document." Plaintiff further alleges that Richardson and Moses retaliated against her by implementing a new payroll management system on January 18, 2000, which was designed to make her miss her deadlines. Plaintiff also alleges that around January 12, 2000, Richardson made her job more difficult by telling the shop foreman that she was in the process of initiating a discrimination lawsuit and that the shop foreman should not converse with any of the secretaries. She claims that Moses also told other employees on several different occasions that they should not talk to the plaintiff or that they should not talk to her about anything unless it was strictly work-related.

Finally, plaintiff claims that Moses lowered her performance evaluation in retalia-tion for her complaint about Richardson. Plaintiff's May 2000 performance appraisal covering the period January 1, 1999 through December 17, 1999, included ratings of "needs improvement in quality of work, attendance, as well as employee relations categories." In plaintiff's evaluation from the previous year, she had been rated as "meets expectations" in quality of work and employee relations categories. Plaintiff eventually resigned from her employment with the FCSD in the summer of 2000.

Plaintiff filed this action on July 28, 2000, alleging that defendant Richardson created a hostile working environment by harassing her on the basis of her sex, and that the County defendants maintained the hostile work environment by failing to prevent and correct the harassment by Richardson. Specifically, she asserts that Richardson sexually harassed her when he asked other staff members about her personal life, made unwelcome sexual advances towards her, hugged her, called her at home, followed her during weekend hours, and asked her out to dinner. She has brought a sexual harassment claim against all the defendants under Title VII and Section 1983.

In addition, plaintiff contends that both Richardson and Moses unlawfully retaliated against her for complaining about the unwelcome sexual advances and harassment and for filing an EEOC charge when they (1) lowered her performance evaluation; (2) isolated her from her co-workers; (3) increased her work load; (4) interfered with her efforts to perform her job; and (5) caused her to fear losing her job. She has brought a retaliation claim against all the defendants under Title VII.

Plaintiff further contends that all the defendants conspired to deprive her of equal protection of the laws and equal privileges and immunities under the laws

in violation of 42 U.S.C. § 1985(3). Finally, plaintiff claims that the defendants breached their duty to carefully train, supervise, and retain employees when they failed to respond to complaints from her and other employees about Richardson's conduct, and failed to take steps to remedy that conduct. Defendants have moved for summary judgment with respect to all of plaintiff's claims.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at

322–23, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548. However, the movant is not required to negate every element of his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

### II. Plaintiff's Claim of Sexual Harassment

Plaintiff has alleged that the defendants harassed her on the basis of sex and created a hostile work environment that deprived her of the benefits and privileges afforded to other employees, in violation of Title VII and in violation of her rights to equal protection and due process of law under the Fifth and Fourteenth Amendments. She has asserted claims against all the defendants under both Title VII and Section 1983.

### A. Standards for Evaluating Sexual Harassment Claims

Plaintiff has alleged that the defendants' conduct in creating and maintaining a hos-

tile work environment violated both Title VII and her Fifth and Fourteenth Amendment rights to equal protection and due process of law.

### 1. *Sexual Harassment Claims under Title VII*

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To prevail on a Title VII claim, a plaintiff must prove that the defendant employer acted with discriminatory intent. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 980–981 (11th Cir. 1989); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 529 (11th Cir.1983). Title VII imposes liability only on the actual employer, and not the individual employees whose actions would constitute a violation of the Act. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996); *Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir.1995).

Although Title VII does not specifically address "harassment," a plaintiff may establish a violation of Title VII by proving that he or she was harassed on the basis of sex and that such harassment affected a condition of his or her employment. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Henson v. City of Dundee*, 682 F.2d 897, 902–904 (11th Cir.1982). As the United States Supreme Court has stated:

> [T]he language of Title VII is not limited to "economic" or "tangible" discrimination. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent to " 'strike at the entire spectrum of disparate treatment of men and women' " in employment.

*Meritor Savings Bank*, 477 U.S. at 64, 106 S.Ct. 2399 (citations omitted). Thus, Title VII grants employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult. *Id.* at 65, 106 S.Ct. 2399. Sexual harassment may violate Title VII when the harassment creates a hostile or offensive working environment, even if it does not directly affect compensation or other economic benefits of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Meritor Sav.*, 477 U.S. at 62, 106 S.Ct. 2399.

An employer is liable for a violation of Title VII based on sexual harassment when the harassing conduct "unreasonably interferes with an employee's job performance by creating a hostile, intimidating, or offensive work environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In order to establish a *prima facie* case for a Title VII claim against an employer for a hostile work environment based on sexual harassment, a plaintiff must show that: 1) she (or he) belongs to a protected group; 2) she (or he) was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and 5) there is a basis for holding the employer liable for the harassment either directly or indirectly. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir.2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (*en banc*); *Henson v. City of Dundee*, 682 F.2d 897, 903–905 (11th Cir.1982); *see also Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir.1995); *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir.1988); *Sparks v. Pilot Freight*

*Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987).

▮ Thus, in order to establish a *prima facie* case of sexual harassment, plaintiff must show not only that she was subjected to unwelcome harassment on the basis of her sex, but also that her work environment was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether a hostile environment is severe or pervasive enough to be actionable under Title VII, the "totality of the circumstances" must be considered; a court must consider not only the frequency of the incidents alleged but also the gravity of those incidents. *Harris,* 510 U.S. at 23, 114 S.Ct. 367; *Vance v. S. Bell Tel. & Tel. Co.,* 863 F.2d 1503, 1511 (11th Cir. 1989). Other factors that are relevant are whether the offensive conduct is physically intimidating or humiliating, and whether it unreasonably interferes with plaintiff's work performance. *Harris,* 510 U.S. at 23, 114 S.Ct. 367. "[I]n order to be actionable under Title VII, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275.

▮ In addition to showing that the harassment was severe or pervasive, the plaintiff must also establish that the employer should be held liable, either directly or indirectly, for the hostile work environment. *See Fleming v. Boeing Co.,* 120 F.3d 242, 246 (11th Cir.1997). If the alleged harasser was not the plaintiff's supervisor, and thus did not have any power to take any tangible, adverse employment action against the plaintiff (such as firing or demoting her for rejecting his sexual advances), then the employer may only be held liable for the co-worker's conduct if the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1278 (11th Cir.2002); *Johnson,* 234 F.3d at 510; *Breda v. Wolf Camera & Video,* 222 F.3d 886, 889 (11th Cir.2000).

### 2. *Sexual Harassment Claims under Section 1983*

In addition to asserting a claim against the County Defendants under Title VII, plaintiff has also brought a claim under Section 1983, alleging that the defendants' abusive and harassing conduct violated her rights to equal protection and due process under the Fifth and Fourteenth Amendments to the Constitution.

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, in order to establish a claim under Section 1983, plaintiff must show a violation of a right secured by the Constitution of the United States, and also that the deprivation of that right was committed by a person acting under color of state law. *Cummings v. DeKalb County,* 24 F.3d 1349 (11th Cir.1994); *see also Graham v. Connor,* 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (" § 1983 is not itself a source of substantive rights,

but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotes omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

Title VII is not the exclusive remedy for employment discrimination in the context of public employment. *See Cross v. State of Alabama*, 49 F.3d 1490, 1507 (11th Cir.1995). When a plaintiff can show that she was subjected to sexual harassment in her employment, and that the harassment was at the hands of a person acting under color of state law, she may also be able to show that she was deprived of her right to equal protection under the laws, as guaranteed by the Fourteenth Amendment. *Id.* at 1507 (there is a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment) (citing *Davis v. Passman*, 442 U.S. 228, 235, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539 (5th Cir.1997); *Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir.1994).

In order to establish a violation of the Equal Protection Clause, a plaintiff must prove discriminatory motive or purpose. *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 (5th Cir.1980); *see also Cross*, 49 F.3d at 1507–1508. The court in *Whiting* held that "such intent should be inferred in the same manner as [the Supreme Court] said it is inferred under [Title VII]." *Whiting*, 616 F.2d at 121; *Cross*, 49 F.3d at 1507–1508. In cases in which a plaintiff asserts a claim under Section 1983 as a parallel basis for relief for employment discrimination, along with a Title VII claim, the elements required to establish the Section 1983 claim typically mirror those required for the Title VII claim. *Whiting*, 616 F.2d at 121; *Cross*, 49 F.3d at 1508; *Hardin v. Stynchcomb*,

691 F.2d 1364, 1369 n. 16 (11th Cir.1982). "Section 1983 actions challenging . . . discrimination under the equal protection clause and Title VII disparate treatment cases both require a showing of discriminatory motive, and the nature of a prima facie showing is the same in either case . . . ." *Lee v. Conecuh County Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir.1981); *see also Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991). Thus, the elements of plaintiff's sexual harassment claim brought under Section 1983 are the same elements required to establish a claim of sexual harassment under Title VII. *Id.* at 1508.

Unlike Title VII, however, which holds the employer responsible for maintaining or failing to remedy a hostile and discriminatory work environment, Section 1983 does not impose liability on the county for the actions of its agents or employees unless a plaintiff is able to show that the person or persons who allegedly violated her constitutional rights were acting pursuant to an official policy, practice, or custom of the county or municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### B. *Magistrate Judge's Conclusions*

The Magistrate Judge first concluded that the plaintiff's sexual harassment claim brought under Title VII was timely filed because it was part of a "continuing violation" that had begun outside the limitations period, but continued through the fall of 1999.[3] The Magistrate Judge found that the incidents complained about by the plaintiff were sufficiently similar and sufficiently numerous and frequent to constitute a continuing violation. Accordingly, the Magistrate Judge concluded that the plaintiff's EEOC charge, which was filed

---

**3.** Defendants have not argued that plaintiff's Section 1983 claim was untimely filed.

on December 20, 1999, was timely filed because the plaintiff had alleged that the harassment by Richardson that began in the summer of 1998 had continued after June 23, 1999.

Second, the Magistrate Judge concluded that the plaintiff had presented sufficient evidence to create a genuine issue of material fact as to whether Richardson harassed her because of her sex, and that she had also presented sufficient evidence to create a genuine issue of material fact as to whether that harassment was so severe or pervasive that it created an intolerable and hostile working environment. Although some of the incidents described by the plaintiff did not appear to be related to her sex, many of them were arguably sexual in nature, and the plaintiff established that she found them unwelcome and offensive. The Magistrate Judge concluded that the plaintiff subjectively perceived the harassment to be unwelcome and offensive, and that she had presented sufficient evidence to create a genuine issue of fact as to whether a reasonable person would also have perceived the harassment to be hostile and abusive. Under the standards set out in *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) and its progeny, the Magistrate Judge found that the plaintiff's allegations against Richardson rose to the level of a discriminatory and hostile working environment in violation of Title VII.

Thus, because the Magistrate Judge concluded that the plaintiff's allegations against Richardson created a genuine issue of material fact as to whether his conduct was sufficiently severe or pervasive to create a hostile working environment, he was not entitled to assert a defense of qualified immunity to plaintiff's Section 1983 claim against him individually. The Magistrate Judge concluded that, viewing the evidence in the light most favorable to the plaintiff, a reasonable person would have known that making multiple sexual advances and innuendos to a co-worker, and continuing to do so after being told that his advances were unwelcome, constituted unlawful sexual harassment and violated the rights of his co-worker. "Mr. Richardson's harassment clearly rises to the level of harassing conduct he should have known would be unlawful." (RR at 73–74, citing *Braddy v. Florida Dep't of Labor*, 133 F.3d 797, 803 (11th Cir.1998)).

Although the Magistrate Judge concluded that defendant Richardson was not entitled to summary judgment on plaintiff's claim against him individually under Section 1983, she further concluded that the County Defendants were entitled to summary judgment on plaintiff's Title VII claim.[4] She found that, because Richardson was not the plaintiff's supervisor, he had no authority to take any tangible employment actions against her. Further-

---

4. Although it is not clear from the Report and Recommendation, the plaintiff has asserted all of her claims against all defendants. As discussed above, Title VII imposes liability only on the employer, however, and not the individual employees who may have discriminated against the plaintiff. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991). Thus, defendants Richardson and Moses are entitled to summary judgment on plaintiff's Title VII claims, because those claims are properly asserted only against the County Defendants. Furthermore, Section 1983 imposes liability only on "persons" who violate the constitutional rights of others while acting under color of law. 42 U.S.C. § 1983. Although plaintiff has apparently asserted her Section 1983 claim against the County Defendants as well as the individual defendants, she has not produced any evidence that defendants Richardson and Moses were acting pursuant to an official custom or policy of Fulton County or the FCSD. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the County Defendants are entitled to summary judgment on all claims brought under Section 1983.

more, she found that, although the County Defendants were put on notice of plaintiff's complaints about Richardson's behavior when the plaintiff complained to Monroe in the fall of 1998, Monroe took prompt remedial action to correct Richardson's behavior. Therefore, the Magistrate Judge concluded that the County Defendants could not be held liable under Title VII for Richardson's allegedly harassing conduct.

### C. *Defendants' Objections*

The defendants have objected to the Magistrate Judge's conclusions on several grounds. First, defendants object to the conclusion that the plaintiff's Title VII claims are timely. Second, defendants object to the Magistrate Judge's finding that the plaintiff's affidavit is admissible, and argue that the incidents of alleged harassment described in the affidavit should not be considered in evaluating her sexual harassment claims. Third, defendants object to the finding that the plaintiff has established a *prima facie* case of sexual harassment because her allegations do not establish that the harassing conduct was either severe or pervasive enough to constitute a hostile work environment in violation of Title VII. Finally, they contend that defendant Richardson is entitled to qualified immunity on the claim asserted against him individually under Section 1983.

### 1. Timeliness of Plaintiff's Title VII Claim

Defendants first · argue that plaintiff's EEOC charge, filed on December 20, 1999, was untimely filed because she complained about alleged sexual harassment that occurred well before June 23, 1999, and thus, occurred outside the 180–day period. Defendants argue that her allegations against Richardson do not constitute a "continuing violation" because the incidents about which she complained were not sufficiently similar or sufficiently frequent. Further-

more, because plaintiff concedes that, after she complained to Monroe in October of 1998, there was a period of approximately three months before Richardson resumed sexually harassing her, she is not able to show that Richardson's conduct in 1998 could be considered part of any "continuing violation" with conduct that occurred in 1999.

 Title VII requires that an employee aggrieved by discriminatory acts file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). In the instant action, plaintiff has shown that she filed her charge of discrimination with the EEOC on December 20, 1999; therefore, she may only recover for discrete acts of discrimination that occurred on or after June 23, 1999. *See Beavers v. Am. Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992). In order to revive an otherwise time-barred claim based on events outside the 180–day period, a plaintiff must show that the conduct complained of is part of a pattern or continuing practice out of which the last incident arose. *Roberts v. Gadsden Mem'l Hosp.,* 835 F.2d 793, 799–800 (11th Cir. 1988); *see also United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

 In *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792 (11th Cir.1992), the Eleventh Circuit Court of Appeals held that "[w]here an employee charges an employer with continuously maintaining any illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." *Id.* at 796 (quoting *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980)). In contrast, "where the employer engaged in a discrete act of discrimination more than 180 days

prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation" are not sufficient to constitute a continuing violation, and the charge must be filed within 180 days of the discrete act. *Id.* In determining whether the conduct constitutes a continuing violation, a court must distinguish between the "present consequences of a one-time violation," which does not extend the limitations period, and the "continuation of the violation into the present," which does. *Id.* (citation omitted); *see also Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir.1993).

The Supreme Court has recently held that incidents constituting a hostile work environment occurring outside the 180 day limitations period are not time-barred as long as they are related to incidents which occurred within the limitations period and the last instance of hostile environment discrimination occurred within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002). The Supreme Court concluded that the unlawful employment practice in a hostile environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." *See id.* at 2074. Thus, as long as that practice continues into the 180–day window before a plaintiff files an EEOC charge, the charge is timely.

■■■■ The Court agrees with the Magistrate Judge's conclusion that the plaintiff has sufficiently alleged a "continuing violation" in the instant action. Although her allegations against Richardson may not constitute acts of "severe" harassment, she does allege that the harassment was so "pervasive" that they created a hostile working environment. In order to establish that acts of harassment were pervasive, however, a plaintiff must show that the conduct occurred frequently over a sufficiently long period of time. Furthermore, before holding an employer liable for the harassing conduct of a co-worker, a complaining employee must put the employer on notice of the harassment and give the employer a reasonable opportunity to take actions to correct the harassment before filing an EEOC charge.

Under the circumstances of this case, the Court finds that the plaintiff's allegations against Richardson are sufficiently similar and sufficiently frequent to constitute a "continuing violation." The alleged incidents of harassment that began in the summer of 1998 and continued throughout 1999 were all part of the same continuous employment practice;, thus, the plaintiff's EEOC charge filed on December 20, 1999, was timely. Accordingly, defendants' Objections [59] with respect to the timeliness of plaintiff's Title VII claims are **OVERRULED**.

### 2. Admissibility of Plaintiff's Affidavit

Defendants' next objection is to the Magistrate Judge's conclusion that the plaintiff's affidavit is admissible for the purpose of opposing defendants' motion for summary judgment. Defendants argue that the plaintiff alleged certain incidents in her affidavit that she previously failed to disclose during the discovery period. Thus, defendants argue that the plaintiff's affidavit is a "sham" affidavit because it is inherently inconsistent with her previous deposition testimony.

The Court agrees with the Magistrate Judge's conclusion that the plaintiff's affidavit is not inherently inconsistent with her deposition testimony such that it is a "sham" affidavit that must be struck from the record. Furthermore, the Court agrees with the Magistrate Judge's conclu-

sion that the defendants have failed to specify which allegations in plaintiff's affidavit contradict any previous statement she may have made during her deposition. Defendants have not identified any statement made by the plaintiff during her deposition indicating that she had. described every incident of harassment by Richardson, and, in fact, the plaintiff said specifically that she had *not* done so. (McDaniel Dep. at 153.) Furthermore, on more than one occasion during her deposition, the plaintiff attempted to list additional incidents of harassment when she was interrupted by defense counsel. (*See, e.g.,* McDaniel Dep. at 138.)

Accordingly, defendants' Objections [59] with respect to the admissibility of plaintiff's affidavit are OVERRULED.

### 3. *Prima Facie* Case of Sexual Harassment

■ Defendants further object to. the Magistrate Judge's conclusion that the plaintiff has established a *prima facie* case of sexual harassment. Defendants contend that the plaintiff's allegations about Richardson's conduct do not establish that his alleged harassment was either severe or pervasive enough to constitute a hostile work environment in violation of Title VII or in violation of the plaintiff's Fourteenth Amendment right to equal protection of the law.

The Court agrees with the Magistrate Judge's conclusion that the plaintiff's allegations are sufficient to create a genuine issue of material fact as to whether Richardson's harassment violated Title VII. First, there is no doubt that the plaintiff's allegations establish that many of the acts of harassment, although not all of them, appeared to be based on plaintiff's sex, as they were overtly sexual in nature, and that they were unwelcome. Furthermore,

although Richardson's conduct toward the plaintiff was not necessarily "severe" when each incident is viewed in isolation, when the incidents are considered in the aggregate, the Court finds that the harassment, as alleged by the plaintiff, was frequent enough and offensive enough to be considered "pervasive" by a reasonable factfinder. *See, e.g., Johnson v. Booker T. Washington. Broad. Serv., Inc.,* 234 F.3d 501, 508 (11th Cir.2000) (allegations of fifteen acts of sexual harassment over a four-month period that included unwanted massages and other unwanted sexual overtures were severe or pervasive enough to constitute a hostile work environment in violation of Title VII).

Accordingly, defendants' Objections [59] with respect to the plaintiff's *prima facie* case of sexual harassment are **OVERRULED**.

### 4. Qualified Immunity of Defendant Richardson

Defendants' final objection to the Report and Recommendation is to the Magistrate Judge's conclusion that defendant Richardson is not entitled to qualified immunity for the claims asserted against him individually under Section 1983. The Magistrate Judge concluded that Richardson was not entitled to qualified immunity because, at the time the events in this action took place in 1998 and 1999, a reasonable public official would have known that making repeated sexual overtures and comments to a co-worker after being told that such comments were unwelcome could constitute unlawful sexual harassment. Defendants contend that Richardson is entitled to qualified immunity because no reasonable person would have known that his conduct could be considered severe or pervasive. enough to violate the plaintiff's rights.[5]

---

**5.** It should be noted that defendant Richardson requested summary judgment only on the

ground of qualified immunity. In support of

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ., Bd. of Trs.*, 28 F.3d 1146, 1149 (11th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir.2000). "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place that 'what he is doing' violates federal law." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir.2000). Once the defendant makes this showing, "the burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993), *modified*, 14 F.3d 583 (1994).

■■■■■ When a government official asserts the defense of qualified immunity, the burden falls on the plaintiff to show that the official violated clearly established law. *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995). This inquiry into whether the law was clearly established is to be made in light of the "specific context of the case" and not as a "broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 200–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Supreme Court requires "that the right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotes omitted)). The central inquiry in determining whether the right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

■■■■■ In the instant action, the Court agrees with the Magistrate Judge that, in 1998, when Richardson allegedly began harassing the plaintiff, the law was clearly established that making repeated unwelcome sexual overtures to a co-worker, and making other derogatory remarks of a sexual nature, could be considered unlawful sexual harassment. *See Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995). The *Cross* court held that the defendants' conduct that included communi-

that defense, defendant argued only that he could not have known that his conduct would be considered severe or pervasive enough to constitute sexual harassment. Defendant has not argued that § 1983, which applies only to a person who is acting under color of state law, would be inapplicable to his conduct. *See* discussion *supra* at 20–22. Accordingly, the Court has assumed that to be the case here, although the Court is uncertain that a

mere co-worker who harasses a fellow employee would be considered to be acting under the color of state law, as a state actor. In any event, defendant did not make such an argument and the Court does not intend to revisit this matter before trial. In short, the Court would not entertain a motion to reconsider on this ground by defendant Richardson.

cating with female employees in an "extremely hostile" and "very angry, very aggressive" manner, "say[ing] derogatory remarks to them in front of others," and throwing objects at female employees was unlawful sexual harassment, and that the 1979 Supreme Court case of *Davis v. Passman*, 442 U.S. 228, 235, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), holding that sexual discrimination against a public employee is unconstitutional, was clearly established law that should have put the defendants on notice that their conduct was unlawful.

Accordingly, defendants' Objections [59] with respect to defendant's Richardson assertion of a qualified immunity defense are **OVERRULED**. The Court agrees with the Magistrate Judge's conclusion that defendant Richardson is not entitled to summary judgment on the plaintiff's Section 1983 claim asserted against him individually.

### D. *Plaintiff's Objections*

Plaintiff has also filed Objections to the Magistrate Judge's Report and Recommendation. Her objection with respect to her sexual harassment claim is to the Magistrate Judge's conclusion that the County Defendants are entitled to summary judgment on her Title VII claim. The plaintiff contends that the County Defendants knew or should have known that defendant Richardson was sexually harassing her and that they failed to take prompt remedial action that was reasonably calculated to end the harassment. Thus, plaintiff argues that the County Defendants may be held liable under Title VII for the harassment perpetrated by Richardson. The Court agrees with the plaintiff that the County Defendants are not entitled to summary judgment on her Title VII claim, and sustains this objection to the Magistrate Judge's Report and Recommendation.

As discussed above, in addition to showing that the alleged harassment was severe or pervasive, in order to assert a valid claim under Title VII for sexual harassment, a plaintiff must also establish that the employer should be held liable, either directly or indirectly, for the hostile work environment created by the employee. *See Fleming v. Boeing Co.*, 120 F.3d 242, 246 (11th Cir.1997). If the alleged harasser was not the plaintiff's supervisor, and thus did not have any power to take any tangible, adverse employment action against the plaintiff (such as firing or demoting her for rejecting his sexual advances), then the employer may only be held liable for the co-worker's conduct if the employer knew or should have known of the harassment and failed to take prompt remedial action. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 510 (11th Cir.2000); *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir.2000).

The Magistrate Judge first concluded that the previous complaints made about Richardson by other employees were not sufficient to put the County Defendants on notice of his harassing conduct. When the plaintiff complained to Monroe in October of 1998, however, the employer was clearly on notice that Richardson was harassing the plaintiff, or at least that she perceived his conduct toward her as sexual harassment. Nevertheless, the Magistrate Judge further found that, "once the county had notice of the harassment it took immediate and appropriate corrective action." (RR at 54.) The undisputed evidence reflects that Monroe spoke to plaintiff over the phone and spoke to both Monroe and Richardson about the plaintiff's complaints. The Magistrate Judge considered Monroe's response in talking to Richardson and the plaintiff, and telling the plaintiff to come back to him to

complain again if the harassment continued, to be an adequate response under the circumstances.

Viewing the evidence in the light most favorable to the plaintiff, however, the Court notes that Richardson himself claims that Monroe never told him that the plaintiff had accused him of sexual harassment at all during the alleged conversation. Instead, according to Richardson, Monroe told him that the plaintiff was complaining that Richardson was being hard on her, and that he treated her more harshly than other secretaries. Richardson claims that Monroe told him only to "be more understanding" of the plaintiff, and also advised him that he should not be alone with her. Defendants have pointed to no evidence that Monroe ever investigated the plaintiff's complaints by asking other employees in the office whether anyone had witnessed Richardson behaving inappropriately towards the plaintiff in any way. Defendants have pointed to no evidence that Monroe did anything at all to determine whether the plaintiff's accusations had any validity whatsoever. Furthermore, it is undisputed that Monroe gave Richardson *no* formal warning or other disciplinary action of any kind and took no action to separate the plaintiff from Richardson in the workplace. Indeed, Richardson claims that he did not change his behavior toward plaintiff in any way after the conversation with Monroe, because he was not under the impression that he had done anything wrong that needed correcting.

In light of the fact that Richardson and Monroe have conflicting accounts of what Monroe said to Richardson during that conversation, the Court concludes that there is a genuine issue of material fact as to whether the FCSD took "prompt remedial action" to correct the alleged harassment by Richardson. Once an employer is made aware that an employee is harassing

another employee and creating a hostile work environment, the employer has an obligation to take prompt corrective action that is an adequate response and is *reasonably calculated* to end the harassment. *See, e.g., Snapp–Foust v. Nat'l Constr., LLC,* 1 F.Supp.2d 773, 780 (M.D.Tenn. 1997). In this case, Monroe apparently took no action at all that was reasonably calculated to end the harassment. Instead, he merely told Richardson to "be more understanding" of the plaintiff, and placed the burden on the plaintiff to come back to him to complain again if Richardson's harassment continued. Furthermore, plaintiff's allegations that both Richardson and Moses continued to harass her even after she filed formal complaints in December, 1999, over a year after her initial complaint against Richardson, create a genuine issue of material fact as to whether the County Defendants took prompt remedial action after the plaintiff filed a formal complaint of harassment.

The Court concludes that the plaintiff has created, at the very least, a genuine issue of material fact as to whether Monroe's actions in telling the plaintiff to come back to him if she had further complaints constituted "prompt remedial action" that was "reasonably calculated" to end the harassment. *Cf. Fleming v. Boeing Co.,* 120 F.3d 242, 247 (11th Cir.1997) (employer took appropriate corrective action when it demoted the alleged harasser, decreased his pay, and assigned the complaining employee to a different supervisor).

Accordingly, plaintiff's Objections [58] are **SUSTAINED** in part. The Court sustains plaintiff's Objection to the Magistrate Judge's recommendation that the County Defendants be granted summary judgment on plaintiff's claim under Title VII for a hostile work environment. The Court concludes that the County Defendants are not

entitled to summary judgment on this claim.

## III. *Plaintiff's Claim of Retaliation*

In addition to her claims based on Richardson's alleged sexual harassment, the plaintiff has also asserted a claim under Title VII for unlawful retaliation. Plaintiff has alleged that, after she filed a formal complaint against Richardson for sexually harassing her, both Richardson and Moses unlawfully retaliated against her in various ways by continuing to harass her and by making it difficult for her to do her job. She has asserted claims against all the defendants under Title VII for the alleged retaliation.[6]

### A. *Standards for Evaluating Retaliation Claims*

Title VII acts to shield employees from retaliation for certain protected practices. Specifically, the statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee or applicant] has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

Proof of retaliation under Title VII is governed by the same framework of shifting evidentiary burdens established for claims of unlawful discrimination in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir. 1986); *see also Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162–63 (11th Cir. 1993). In order to prevail, a plaintiff must first establish a *prima facie* case of retaliation. *Goldsmith*, 996 F.2d at 1162–63; *Donnellon*, 794 F.2d at 600–601; *see also Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1524 (11th Cir.1991) (footnote omitted); *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985). Once a *prima facie* case has been established, the employer must. come forward with a legitimate non-discriminatory reason for its action. *Goldsmith*, 996 F.2d at 1162–63; *Donnellon*, 794 F.2d at 600–601; *see also Weaver*, 922 F.2d at 1525–1526. If the employer carries its burden of production to show a legitimate reason for its action, the plaintiff then bears the burden of proving by a preponderance of the evidence that the reason offered by the defendant is merely a pretext for unlawful retaliation. *Goldsmith*, 996 F.2d at 1162–63; *Donnellon*, 794 F.2d at 600–601.

To establish a *prima facie* case of illegal retaliation under 42 U.S.C. § 2000e–3(a), plaintiff must show that: (1) she engaged in a statutorily protected expression; (2) she received an adverse employment action, and (3) there was a causal link between the protected expression and the

---

**6.** It is not entirely clear from plaintiff's Complaint whether she has intended to assert claims under Section 1983 against Richardson and Moses individually for their alleged "retaliation," and the parties have not briefed the issue of whether an allegation of "retaliation" would be considered a violation of the plaintiff's Fourteenth Amendment right of equal protection under the laws that would give rise to a claim under Section 1983. In any event, to the extent that the plaintiff intended to assert a claim under Section 1983 based on the alleged acts of "retaliation," the Court finds that all defendants would be entitled to summary judgment on such a claim for the same reasons that the County Defendants are entitled to summary judgment on plaintiff's Title VII claim.

adverse action. *See, e.g., Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1454 (11th Cir.1998); *Weaver,* 922 F.2d at 1524; *Simmons,* 757 F.2d at 1189. Once a plaintiff has established a *prima facie* case of retaliation, the employer must present a legitimate reason for the adverse employment action taken against the plaintiff, and if it does so, the plaintiff must then present evidence that the employer's proffered reason is merely a pretext for unlawful retaliation.

### B. *Magistrate Judge's Conclusions*

As discussed above, defendants Richardson and Moses are entitled to all of plaintiff's Title VII claims because Title VII imposes liability only on the actual employer, and not the individual employees whose actions would constitute a violation of the Act. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996); *Cross v. State of Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995).

The Magistrate Judge further concluded that the County Defendants were also entitled to summary judgment on plaintiff's claims of retaliation because she has failed to establish that either Richardson or Moses took any action against her that could be viewed as an "adverse employment action." Under the Eleventh Circuit's holding in *Davis v. Town of Lake Park,* 245 F.3d 1232 (11th Cir.2001), an employer's criticism of an employee's job performance or an unsatisfactory performance evaluation can not be considered an "adverse employment action" unless it results in tangible economic consequences, such as a reduction in salary or a lost opportunity for promotion. Thus, although the plaintiff complains that Moses and Richardson took various actions against her that she considered retaliatory, including a lowered performance evaluation, none of her allegations rises to the level of an "adverse

employment action," as that term is defined in Title VII.

### C. *Plaintiff's Objections*

 Plaintiff objects to the Magistrate Judge's conclusion that her lowered performance evaluation cannot be considered an "adverse employment action" for the purpose of a claim of retaliation under Title VII. She concedes that the *Davis* decision holds that an employer's poor evaluation of an employee's job performance can not be considered an adverse employment action without some showing of a tangible economic consequence. Nevertheless, she argues that the *Davis* decision applies only to claims of race discrimination, not retaliation.

The Court rejects the plaintiff's argument and agrees with the Magistrate Judge that, under the *Davis* decision, the plaintiff has not shown that the defendants took any action against her that could be considered an adverse employment action, and thus, she can not establish a claim of unlawful retaliation under Title VII. Although *Davis* involved a claim of race discrimination, the *Davis* Court specifically noted that the "adverse action requirement" was also imposed in claims arising under Title VII's retaliation clause. *Davis,* 245 F.3d at 1238. In holding that a plaintiff in a Title VII case must show that the employer took some action that had a tangible economic consequence, the *Davis* Court reviewed many other claims arising under Title VII alleging both discrimination and retaliation, and did not distinguish between the two types of claims for the purpose of determining whether a plaintiff had shown an "adverse employment action." *Id.* at 1238–1242 (discussing many other cases alleging both discrimination and retaliation under Title VII).

Thus, the plaintiff has not shown that the holding in *Davis* is limited strictly to

claims alleging race discrimination, and the Court concludes that is not so limited. The Eleventh Circuit requires that a plaintiff show that a lowered performance evaluation had some form of tangible economic consequence before the evaluation will be considered an "adverse employment action" for the purpose of a Title VII claim. Although the plaintiff alleges that Moses gave her a performance evaluation that was unfairly low in retaliation for her complaints about Richardson, she has not shown that the evaluation affected her salary or benefits, or that she was denied overtime or promotion opportunities, or that it had any other tangible economic consequences. Thus, she has not shown that her employer took an adverse employment action against her and she has failed to establish a *prima facie* case of unlawful retaliation under Title VII.

Accordingly, the plaintiff's Objections [58] with respect to her retaliation claim are **OVERRULED**. The Court **ADOPTS** the Magistrate Judge's recommendation that all defendants are entitled to summary judgment on plaintiff's claim of retaliation.[7]

### IV. Plaintiff's Claim of Conspiracy under Section 1985

The Magistrate Judge concluded that the plaintiff had abandoned her claim under Section 1985 that the defendants had conspired together to deprive her of her constitutional rights, and thus, all defendants were entitled to summary judgment on that claim. As no party has objected to that conclusion, the Court **ADOPTS** the Magistrate Judge's Recommendation that all defendants be granted summary judgment on plaintiff's Section 1985 claim.

### V. Plaintiff's Claim of Negligent Supervision and Retention

In addition to her federal claims, plaintiff has asserted a claim under Georgia common law against all the defendants for negligent training, retention, and supervision of employees. The Magistrate Judge concluded that the defendants were entitled to summary judgment on this claim because the plaintiff had failed to present sufficient evidence that the County Defendants had previously been put on notice of Richardson's tendency to sexually harass other employees before the plaintiff complained to Monroe in 1998 and, further, that the defendants responded appropriately after the plaintiff complained.

In briefing this issue, both the plaintiff and defendants engaged in a very cursory discussion that treated the claim like any other negligence claim. Accordingly, the magistrate judge tracked that discussion and determined that, on the merits, plaintiff had not made out a claim of negligent supervision and retention. Before reaching that question, however, it seems to the Court that there are perhaps other more fundamental bases for granting defendants' motion, that could obviate the need to reach the merits of the matter.

First, although the defendants asserted the defenses of sovereign and official immunity in their Answer, none of the parties briefed the issue of sovereign immunity with respect to the plaintiff's state law claim and, for that reason, the Magistrate Judge did not mention sovereign immunity in her Report and Recommendation. Nevertheless, this Court is not certain why the doctrine of sovereign (or governmental) immunity, which is found in Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983, as amended in 1991, is not applicable.

---

**7.** That the plaintiff may not have stated a retaliation claim, however, does not necessarily mean that the incidents cited in support of that claim will be inadmissible to support plaintiff's substantive Title VII claim.

Pursuant to this constitutional provision, counties and other political subdivisions of the State of Georgia are absolutely immune from suit for tort liability, unless that immunity has been specifically waived pursuant to "an Act of the General Assembly which specifically provides that sovereign immunity is waived and the extent of such waiver." *Gilbert v. Richardson*, 264 Ga. 744, 747, 452 S.E.2d 476, 479 (1994) (quoting the 1991 amendments to the Georgia Constitution). Sovereign immunity applies equally to public school districts in Georgia, unless such immunity is waived. *Wellborn v. DeKalb County Sch. Dist.*, 227 Ga.App. 377, 379, 489 S.E.2d 345, 347 (1997); *Crisp County School System v. Brown*, 226 Ga.App. 800, 800–801, 487 S.E.2d 512, 514 (1997); *Coffee County Sch. Dist. v. Snipes*, 216 Ga.App. 293–4, 454 S.E.2d 149 (1995).

The Georgia Tort Claims Act provides for a limited waiver of the state's sovereign immunity for the torts of its officials and employees, but the Act expressly excludes counties and school districts from the waiver. O.C.G.A. § 50–21–22(5). Therefore, the Georgia Tort Claims Act does not divest the County Defendants of sovereign immunity. Because sovereign immunity can only be waived by a legislative act that specifically states that sovereign immunity is waived, and because the plaintiff has failed to identify any legislative act that waives the immunity of the county or school district, it would appear that the County Defendants are immune from suit on plaintiff's state law claim. *See Wellborn*, 227 Ga.App. at 377–80, 489 S.E.2d 345; *Coffee*, 216 Ga.App. at 293–94, 454 S.E.2d 149; *see also Davis v. DeKalb County Sch. Dist.*, 996 F.Supp. 1478, 1484 (N.D.Ga.1998). Yet, the fact that defendants raised this immunity in their Answer, but did not raise this as a ground for summary judgment, suggests to the Court that defendants do not believe that the

doctrine of sovereign immunity is applicable here.

 Furthermore, to the extent that plaintiff intended to assert this tort claim against defendants Moses or Richardson, individually, the merits of such a negligent hiring/retention claim are problematic. That is, any negligence in the hiring/retention of Richardson, would be charged to defendant FCSD, not defendant Moses. Further, Richardson obviously cannot be sued for negligently hiring or negligently retaining himself as an employee. Moreover, the Court is uncertain whether these defendants are shielded against state tort liability under the doctrine of official immunity. Whereas sovereign immunity applies to bar tort claims against counties and their employees acting in their official capacities, official immunity, as recognized under Georgia law, offers limited protection to public officials and employees from tort claims against them in their individual capacities. *See Woodard v. Laurens Cty.*, 265 Ga. 404, 406, 456 S.E.2d 581, 583 (1995); *Gilbert*, 264 Ga. at 750, 452 S.E.2d at 481.

As to both of these kinds of immunity, it may be that the defendants can waive this immunity. If so, the Court would conclude that defendants have waived said immunity by failing to allege such in their motion for summary judgment. If such immunity is not waivable by an individual party, however, the Court would have to reach the question, *sua sponte*.

 Of even greater concern to the Court than the immunity matter, however, is the fact that neither party attempted to grapple with Georgia law concerning a defendants' liability for purely emotional damages in connection with a tort resting only on negligent conduct. Again, neither side discussed this matter in their briefs, treating the claim as a routine negligence claim, although plaintiff did cite a couple of

Georgia Court of Appeals' decisions in her objections to the magistrate judge's Report and Recommendation granting summary judgment on this claim. The gist of plaintiff's argument, made for the first time in her objections, is that a more lenient standard for negligent hiring/training claims exists under Georgia law than applies under Title VII substantive claims for sexual harassment. As this Court has had to deal with this type of state negligence claim in the past, however, it is aware that the matter is far more complicated than either party's brief would suggest.

First, plaintiff has correctly cited two Georgia Court of Appeals cases that upheld the denial of summary judgment for a claim of negligent retention of an employee who had allegedly engaged in sexually harassing conduct: *B.C.B. Company v. Troutman*, 200 Ga.App. 671, 409 S.E.2d 218 (1991) and *Harvey v. McLaughlin*, 198 Ga.App. 105, 400 S.E.2d 635 (1990). Yet, as this Court has previously discovered in earlier, unrelated litigation before this Court,[8] neither of these cases suggests an awareness of conflicting Georgia Supreme Court authority on the matter. Specifically, a long line of Georgia authority recognizes an "impact rule" for negligence claims. This rule holds that, in a claim concerning negligent conduct, recovery for emotional distress is allowed only where there is some impact on the plaintiff, and this impact must be a physical injury. *See, e.g., Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584–87, 533 S.E.2d 82 (2000), which contains a good discussion of the Georgia authority concerning this rule. As the sexual harassment claims in the two cases cited by plaintiff sought damages for only emotional injury, they appear to run afoul of the impact rule. Indeed, a year after the *Troutman* decision, the Georgia

Supreme Court reiterated the "impact rule" in *Ryckeley v. Callaway*, 261 Ga. 828, 412 S.E.2d 826 (1992). Notwithstanding the reiteration of this principle, the Georgia Court of Appeals again ignored it in *Rogers v. Carmike Cinemas, Inc.*, 211 Ga. App. 427, 439 S.E.2d 663 (1993), holding that a plaintiff properly alleged a negligent hiring/retention claim based on the sexual harassment of a co-employee, even though the plaintiff appeared to seek damages based only on emotional injury and had suffered no physical injury.

Were the above cases the last word in this area, trial courts attempting to apply them would be in hopeless confusion. Fortunately, in the last year, the Georgia Court of Appeals has clarified the area. Specifically, in *H.J. Russell & Co. v. Jones*, 250 Ga.App. 28, 550 S.E.2d 450 (2001), the Court reviewed a case in which the plaintiff had reached a jury on a claim of negligent retention/supervision based on the sexually harassing conduct of plaintiff's supervisor. The court overturned the jury verdict, noting that "negligent conduct, without more, will not support a recovery for emotional distress." *Id.* at 30, 550 S.E.2d 450. Rather, the court noted, to claim such damages based on negligent conduct, the plaintiff must show either physical or pecuniary loss or "malicious, wilful, and wanton action directed at the [plaintiff]." 250 Ga. 30–31, 295 S.E.2d 512, citing *Ryckeley v. Callaway*, 261 Ga. 828, 829, 412 S.E.2d 826 (1992).

In this case, plaintiff claims that all defendants, save Richardson, were negligent in hiring, retaining, or supervising defendant Richardson. Plaintiff seeks damages for emotional distress as a result of this alleged negligence, but alleges no physical injury. In addition, plaintiff has failed to adduce evidence that would demonstrate malicious, wilful or wanton action toward

---

**8.** *Arrington v. Marietta Toyota, Inc.*, 1:96–CV03475A–JEC, Order of September 23, 1999[70] at 9–13, 1999 WL 33582099 (**attached**).

plaintiff by the defendants in their handling of Richardson. For this reason, the Court concludes that the magistrate judge correctly granted summary judgment to defendants on this claim.[9]

Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation that all defendants are entitled to summary judgment on plaintiff's state law claim of negligent training, supervision, and retention, albeit for somewhat different reasons than those relied upon by the Magistrate Judge.[10]

### CONCLUSION

The Magistrate Judge's Report and Recommendation [52] is **ADOPTED IN PART and REJECTED IN PART**. The Court ADOPTS the Magistrate Judge's recommendations, *except* that portion of the Report and Recommendation concluding that the County Defendants are entitled to summary judgment on plaintiff's Title VII claim alleging that defendants maintained a hostile working environment. Although the Court has rejected that conclusion, it agrees with the remaining recommendations of the Magistrate Judge that defendant is entitled to summary judgment on plaintiff's claims of unlawful retaliation, conspiracy to deprive her of her constitutional rights, and negligent retention and supervision.

Accordingly, defendants' Motion for Summary Judgment [32] is **GRANTED in part and DENIED in part**. Defendant Moses is entitled to summary judgment on all of plaintiff's claims and he is therefore **DISMISSED** from this action. The County Defendants are entitled to summary judgment on plaintiff's claims of unlawful retaliation, conspiracy to deprive her of her civil rights, and negligent supervision and retention, but shall proceed to trial on the substantive Title VII sexual harassment claim. Defendant Richardson is entitled to summary judgment on all of plaintiff's claims under Title VII and Section 1985, as well as her claim of unlawful retaliation under Section 1983 and her state law claim of negligent retention and supervision, but he shall proceed to trial on plaintiff's § 1983 claim.

Thus, the plaintiff shall be permitted to proceed with her Title VII claim against the County Defendants for maintaining a hostile work environment and her Section 1983 claim against defendant Richardson, individually, for harassing her on the basis of sex, thereby violating her Fourteenth Amendment right to equal protection of the laws.

---

9. Further, as plaintiff has a viable federal claim that will proceed to the jury, this Court is uncertain why she would want to muddle the trial with a state claim whose parameters have been historically so unclear and whose elements clearly set out a more onerous burden for plaintiff to meet than does the federal claim. Proceeding with such a claim could well pose more problems for plaintiff down the road, because, should she prevail on both the state and federal claims, but have the former claims reversed on appeal, it would be difficult to try to unravel the damages calcu-

lated by the jury on two similar claims arising out of the same core facts, one of which claims would have subsequently been dismissed.

10. Because the Court has concluded that a more onerous standard applies to plaintiff's claim than either she or the magistrate judge had employed in analyzing the state claim, the Court has not reached the question whether plaintiff would survive on the more lenient standard applicable to a garden-variety negligence claim.